## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, | Civil Action No. _____ |
| Plaintiffs, | |
| v. | Removed from the Superior Court of New Jersey, Law Division, Mercer County, Case No. MER-L-000271-24 |
| BLACK KNIGHT TECHNOLOGIES, LLC, BLACK KNIGHT, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, | |
| Defendants. | |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT** on March 26, 2024, based on the following allegations, Defendants Black Knight Technologies, LLC and Black Knight, Inc. (collectively, "Black Knight") hereby remove this action from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. MER-L-000271-24, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1367, 1441 and 1446, with full reservation of any and all defenses and objections.

## D.N.J. LOCAL RULE 10.1 STATEMENT

1.      The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan. The address for Atlas Data Privacy Corporation is 201 Montgomery Street, Suite 263, Jersey City,

New Jersey 07302.  The addresses of the remaining plaintiffs, law enforcement officers who have purportedly availed themselves of New Jersey law to conceal their addresses, were not included in Plaintiffs' Complaint.  Black Knight is unable to determine the addresses of plaintiffs Jane Doe-1 and Jane Doe-2, whose identities are unknown.

2.      The defendants in this action are Black Knight Technologies, LLC and Black Knight, Inc., both of which are located at 601 Riverside Avenue, Jacksonville, Florida 32204.

## INTRODUCTION

3.      On February 6, 2024, Plaintiffs Atlas Data Privacy Corporation. ("Atlas"), Jane Doe-1, Jane Doe-2, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (the "Individual Plaintiffs") (collectively, with Atlas, "Plaintiffs") filed a civil action against Black Knight in the Superior Court of New Jersey, Law Division, Mercer County, captioned *Atlas Data Privacy Corporation, et al. v. Black Knight Technologies, LLC, et al.*, which was assigned Docket No. MER-L-000271-24 (the "State Court Action").  Plaintiffs purport to bring claims against Black Knight for alleged violations of Daniel's Law (N.J.S.A. 47-1A-1, *et seq.*, and N.J.S.A. 56:8-166.1), claiming that Black Knight failed to cease making available the home addresses and unpublished home telephone numbers of covered persons in response to e-mailed requests made to Black Knight.  The "covered persons" specifically named in the Complaint are all law enforcement officers.  Plaintiff Atlas also purports to assert claims on behalf of 19,020 covered persons, including unidentified judges, law enforcement officers, prosecutors, and their family members, who allegedly have assigned their claims against Black Knight to Atlas.  Exhibit A (Complaint), at ¶¶ 25-26.

## PROCEDURAL REMOVAL REQUIREMENTS

4.      Venue is proper in this Court under 28 U.S.C. § 1441(a) because the United States District Court for the District of New Jersey geographically subsumes the Superior Court of New

ME1 47955578v.1

Jersey, Law Division, Mercer County, in which Plaintiffs filed the Complaint. *See* 28 U.S.C. § 110.

5.      This Notice is timely because thirty days have not yet elapsed from service of the Complaint on Black Knight on February 26, 2024. *See* 28 U.S.C. § 1446(b).

6.      Copies of all State Court process, pleadings, and orders served on Black Knight are attached as Exhibit A, as required by 28 U.S.C. § 1446(a).

7.      A written notice attaching a copy of this Notice of Removal is being served on Plaintiffs and filed with the Clerk of the New Jersey Superior Court, as required by 28 U.S.C. § 1446(d).

## BASES FOR REMOVAL

**Traditional Diversity Jurisdiction**

Diversity of Citizenship

***Defendants***

8.      Defendant Black Knight Technologies, LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business in Jacksonville, Florida. The citizenship of a limited liability company is determined by the citizenship of each of its members. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 430 (3d Cir. 2010). The sole member of Black Knight Technologies, LLC is Black Knight InfoServ, LLC, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in Jacksonville, Florida. The sole member of Black Knight InfoServ, LLC is Black Knight Financial Services, LLC, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in Jacksonville, Florida. The sole member of Black Knight Financial Services, LLC is Black Knight Financial Services, Inc., a corporation incorporated in the State of

ME1 47955578v.1

Delaware with its principal place of business in Jacksonville, Florida. Thus, Black Knight Technologies, LLC is a citizen of both Delaware and Florida.

9.    Defendant Black Knight, Inc. is a corporation incorporated in the State of Delaware with its principal place of business in Jacksonville, Florida. Pursuant to 28 U.S.C § 1332(c)(1), Black Knight, Inc. is a citizen of both Delaware and Florida.

10.   Richard Roes 1-10 and ABC Companies 1-10 are fictitious individuals and entities and are disregarded for purposes of removal. *See, e.g., Dozier v. E. Mfg. Corp*. 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

### *Individual Plaintiffs*

11.   Plaintiffs assert that Plaintiff Sergeant Scott Maloney is currently a veteran police officer serving with the Rahway, New Jersey Police Department, and that Sergeant Maloney is a resident of New Jersey. *See* Exhibit A, at ¶ 17.

12.   Plaintiffs assert that Plaintiff Officer Justyna Maloney is currently a veteran police officer serving with the Rahway, New Jersey Police Department, and that Officer Maloney is a resident of New Jersey. *Id.*

13.   Plaintiffs assert that Plaintiff Detective Patrick Colligan is a 32-year veteran of the Franklin Township New Jersey Police Department. *Id.*, at ¶ 21. Upon information and belief, Detective Colligan is a resident of the State of New Jersey. *See* N.J.S.A. 40A:14-122.8 ("Every member of a police department and force shall be a resident of the State of New Jersey while serving in such position."); N.J.S.A. 52:14-7(a)(3) ("Every person holding an office, employment, or position ... with a county, municipality, or other political subdivision of the State or an authority, board, body, agency, district, commission, or instrumentality of the county, municipality, or subdivision ... shall have his or her principal residence in this State").

14.     Plaintiffs assert that Plaintiff Officer Peter Andreyev is a 32-year veteran of the Point Pleasant New Jersey Police Department.  *See* Exhibit A, at ¶ 22.  Upon information and belief, Officer Andreyev is a resident of the State of New Jersey.  *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7(a)(3).

15.     Plaintiffs assert that Plaintiff Officer William Sullivan is an 18-year veteran of the New Jersey Department of Corrections.  *See* Exhibit A, at ¶ 23.  Upon information and belief, Officer Sullivan is a resident of the State of New Jersey.  *See* N.J.S.A. 52:14-7(a)(3).

16.     Plaintiffs assert that Plaintiff Jane Doe-1 is a veteran police officer working in Northern New Jersey.  *See* Exhibit A, at ¶ 15.  Upon information and belief, Officer Jane Doe-1 is a resident of the State of New Jersey.  *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7(a)(3).

17.     Plaintiffs assert that Plaintiff Jane Doe-2 is a veteran correctional police officer working in Northern New Jersey, and that Officer Jane Doe-2 is a resident of New Jersey.  *See* Exhibit A, at ¶ 16.

18.     As such, all Individual Plaintiffs are residents of the State of New Jersey for diversity purposes.

### *Atlas Data Privacy Corporation*

19.     Atlas purports to assert claims on behalf of 19,020 alleged assignors who are all "covered persons" under Daniel's Law.  *Id.* at ¶ 25.

20.     The assignors are described as "including a significant number of individuals who are family members of judges, law enforcement officers and prosecutors."  *Id.*

21.     Upon information and belief, the assignors to Atlas are residents of New Jersey.[1] *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7(a)(3).

---

[1] Atlas also alleges that the assignors include persons who "had previously resided or worked in New Jersey," *id.*, at ¶ 26, but Atlas does not indicate who those persons specifically are or what state they now reside in (much less that any of them are domiciled in Delaware or Florida).

22.     Atlas is a Delaware corporation with its principal place of business located in New Jersey.  *See* Exhibit A, at ¶ 24.  Therefore, for diversity purposes, Atlas is a citizen of both Delaware and New Jersey.

23.     Although the presence of Atlas typically would eliminate diversity jurisdiction (since Black Knight also is a Delaware corporation), this Court should disregard the citizenship of Atlas because, upon information and belief, its assignments were improperly or collusively made to defeat diversity jurisdiction.

24.     In *Kramer v. Caribbean Mills, Inc.*, the United States Supreme Court held that assignments, even ones permissible under state law, can be disregarded for diversity purposes where "improperly or collusively" made for purposes of manipulating diversity jurisdiction. 394 U.S. 823, 825 (1969).  The Supreme Court has more recently ruled that the "diversity jurisdiction statute [requires] courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating *or destroying diversity jurisdiction.*"  *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) (emphasis added).

25.     Circuit courts and district courts nationwide have likewise taken the position that assignments cannot "improperly or collusively" be used to create or destroy diversity jurisdiction. *See*, *e.g.*, *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) ("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact."); *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) ("In many cases considering whether a partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI."); *Carter v. Seaboard Coast Line R. Co.*, 318 F. Supp. 368, 372 (D.S.C. 1970) ("It is accordingly, the right of this Court,

when the issue of federal jurisdiction is raised, to inquire into the purpose and character of an assignment, which either creates or defeats federal jurisdiction."); *E. I. Du Pont D Nemours & Co. v. Agfa NV*, 2:18-CV-326, 2019 WL 279989, at *9 (E.D. Va. Jan. 22, 2019) ("Most cases that have considered this narrow question have determined that a collusive transfer to defeat subject matter jurisdiction may be held invalid.").

26.    In determining whether an assignment has been "improperly" and/or "collusively" made, Courts examine several factors, including: (1) the comparative size of the interest assigned; (2) whether the assignee held any interest in the litigation before the assignment; (3) whether the assignor and assignee are controlled by the same party; (4) whether the assignment occurred shortly before the litigation commenced; (5) whether the assignment represents what is essentially a contingent fee arrangement for collection work; and (6) whether there is a strong likelihood of prejudice against the defendant. *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, CV 20-2739, 2021 WL 5231870, at *4 (E.D. La. Nov. 10, 2021) (citing *Grassi*, 894 F.2d at 186). District Courts in the Third Circuit consider similar factors when determining whether an assignment was made to improperly or collusively manipulate diversity jurisdiction. *See McNamara v. Hess Corp.*, No. CV 2020-0060, 2022 WL 17584009, at *7 (D.V.I. Dec. 12, 2022); *Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.*, 520 F. Supp. 753, 756 (W.D. Pa. 1981).

27.    Based on these factors, the Court should ignore the assignments to Atlas by the individuals alleged to be covered under Daniel's Law for purposes of diversity jurisdiction. Indeed, the timeline of events shows that Atlas is a *de facto* contingent fee/litigation finance vehicle formed to serve Daniel's Law claimants, Atlas' owners or investors, and Plaintiffs' counsel.

28.    As an initial matter, Atlas did not exist prior to the passage of Daniel's Law. Daniel's Law was enacted in November 2020. *See* Exhibit A, at ¶ 8. Atlas was not incorporated until April 27, 2021. *See* Exhibit B (Certificate of Incorporation).

29.     Upon information and belief, on or about April 11, 2023, Rajiv Parikh – the lead counsel for Plaintiffs in this lawsuit at Genova Burns, LLC – registered as a lobbyist for Atlas in New Jersey, and advocated for amendments to Daniel's Law to (i) allow covered persons to assign their interests to companies like Atlas to pursue claims in litigation; and (ii) make mandatory the previously permissive $1,000 statutory damages provision.   *See* Exhibits C (notice of representation by governmental affairs agent) and D (2023 annual report of governmental affairs agent).

30.     Based at least in part on these lobbying efforts, these two amendments were made to Daniel's Law on or about July 20, 2023.

31.     Upon information and belief, after passage of amendments to Daniel's Law in July 2023, Atlas obtained partial assignments from covered persons for the purpose of initiating litigation against companies like Black Knight.

32.     Atlas registered to do business in New Jersey on or about January 12, 2024.   *See* Exhibit E (registration certificate).

33.     But even before Atlas was registered to do business in New Jersey, during the last week of December 2023, and without any forewarning or effort to coordinate with Black Knight, Atlas facilitated the transmission of almost 30,000 e-mails by alleged covered persons to Black Knight requesting the removal of information purportedly covered under Daniel's Law.   *See* Exhibit A, at ¶¶ 51, 52.  These e-mails were part of a broader campaign spearheaded by Atlas that sent hundreds of thousands of such requests to more than 130 businesses.[2]  Indeed, Atlas' removal-

---

[2] The more than 130 companies that Atlas has sued are listed in five consolidation motions filed by Atlas on March 12, 2024 in *Atlas Data Privacy Corporation, et al. v. Pipl, Inc*., Case No. MON-L- 000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corporation, et al. v. New Jersey Property Records*, LLC, Case No. MID-L-000811-24 (Middlesex County, NJ); *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corporation, et al. v. Enformion*, LLC, Case No. BER-L-000767-24 (Bergen County, NJ); and *Atlas Data Privacy Corporation, et al. v. Whitepages, Inc*., Case No. MER-L-000270-24 (Mercer County, NJ).  Atlas is seeking to

request e-mails sent to Black Knight each reference only one purported home address or one purported unpublished home telephone number for each covered person. Thus, in many instances, Black Knight received four or five Atlas e-mails from a single covered person rather than one e-mail referencing all of that individual's purported home addresses and unpublished home telephone numbers.

34.    Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit, with its lobbying firm (Genova Burns LLC) identified as Plaintiffs' counsel. The foregoing chronology demonstrates that the assignments to Atlas are part of a broader, well-coordinated litigation strategy concocted by Plaintiffs' counsel and Atlas in an effort to monetize New Jersey's Daniel's Law for their benefit.

35.    Based on the above chronology, the relevant factors under the case law establish that Atlas' assignments are "improper or collusive," and therefore should be disregarded for diversity purposes. Atlas did not hold "any interest in the litigation before the assignment[s]." *NPD Mgmt. & Bldg. Servs.*, 2021 WL 5231870, at *4. Furthermore, since the assignment provision in Daniel's Law was enacted in July 2023, it appears that "the assignment occurred shortly before the litigation commenced." *Id.* Given Atlas' lobbying for the assignment and mandatory statutory damages provisions, facilitation of mass e-mails by alleged covered persons (using nearly identical language and Atlas e-mail domains), and role as lead plaintiff in over 130 Daniel's Law actions – while represented by the same law firm that successfully lobbied on its behalf to favorably amend Daniel's Law – it is wholly reasonable to infer that Atlas stands to be financially compensated from the proceeds of its lawsuits. Accordingly, Atlas' assignments "represent[] what is essentially a contingent fee arrangement for collection work." *Id.*

---

consolidate all of its cases, brought against different and unrelated defendants, into one consolidated action in each of Bergen, Morris, Middlesex, Mercer and Monmouth counties.

36.     Moreover, upon information and belief, Atlas' assignments are "partial" rather than "complete" – another factor weighing in favor of discarding them for diversity purposes.  *FNBN-RESCON I LLC v. Ritter*, No. 2:11–CV–1867, 2012 WL 3929950, at *5 (D. Nev. Sept. 6, 2012). It is implausible to conclude that any of the purported assignors to Atlas would have assigned all of their Daniel's Law statutory remedies to Atlas – and especially the entirety of the mandatory $1,000 damages awards – when each such covered person easily could have made a suppression request without facilitation by Atlas.  In addition to the likelihood that the assignors retain some financial interest in their Daniel's Law claims, the Complaint seeks injunctive relief that only would benefit the assignors as covered persons – an order directing the suppression of the covered persons' protected information and the appointment of a monitor.  *See* Exhibit A, at Prayer for Relief, ¶¶ A, E, F.  And even if Atlas' assignment agreements purport to be complete, it is unclear how covered persons could completely assign their right to enforce ongoing compliance with Daniel's Law for their personal safety and security.

37.     Thus, based on the pleadings, available facts, and applicable legal standard, this Court should ignore the assignments to Atlas for purposes of diversity jurisdiction.  In the absence of Atlas, complete diversity of citizenship existed between the parties at the time Plaintiffs' Complaint was filed, and complete diversity of citizenship exists at the time of removal.

38.     If the Court nevertheless questions the existence of diversity of citizenship, it should – at a minimum, and before ruling on any motion to remand – order discovery of Atlas related to the factors relevant to the diversity analysis under applicable law (such as the size of the interest assigned, whether the assignee had any interest in the matter before the assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against

ME1 47955578v.1

the defendant). *See*, *e.g.*, *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 794 F. Supp. 2d 265, 268 (D. Mass. 2011) (permitting limited jurisdictional discovery into assignments alleged to be collusive in nature); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant to take jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

39.     Indeed, the Third Circuit has ruled that "generally jurisdictional discovery should be allowed unless [a jurisdictional] claim is 'clearly frivolous.'" *Qtech Servs., LLC v. Verition Fund Mgmt., LLC*, CIV.A. 2-10-CV-00495, 2010 WL 4961636, at *2 (D.N.J. Nov. 30, 2010) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (cleaned up); *see also Fabricant v. Intamin Amusement Rides Int. Corp. Est*, CV 19-12900, 2019 WL 3315496, at *3 (D.N.J. July 24, 2019) ("Jurisdictional discovery is appropriate where a party raises a factual challenge to jurisdiction."). Therefore, if necessary, the Court should permit limited jurisdictional discovery if Atlas seeks to remand this case back to New Jersey Superior Court.

<u>Amount in Controversy</u>

40.     The second requirement of traditional diversity jurisdiction is that the amount in controversy exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). When the Plaintiffs' Complaint, as here, "does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782 n. 2 (3d Cir. 2020) (quoting, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

41.     Only a single plaintiff need satisfy the amount in controversy requirement. The Court may then exercise supplemental jurisdiction over any other plaintiffs, regardless of the value of their claims. "[W]here the other elements of [diversity] jurisdiction are present and *at least one*

named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 549 (2005) (emphasis added); *see also Burgess v. Bennet*, 2021 WL 1050313, at \*5 n. 9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.").

42.    In this action, Plaintiffs seeks to recover compensation based on Black Knight's alleged failure to comply with Daniel's Law. *See* Exhibit A, at ¶¶ 50, 62, and at Prayer for Relief, ¶¶ B, C, D.

43.    Plaintiffs allege that Daniel's Law requires an award, under N.J.S.A. 56:8- 166.1(c), of the following damages: (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act; (2) punitive damages upon proof of willful or reckless disregard of the law; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred. *Id.*, at ¶ 50.

### *Actual/Statutory Damages*

44.    Daniel's Law states that the Court must award "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act." N.J.S.A. 56:8- 166.1(c)(1). Thus, each Plaintiff is seeking at least $1,000 in damages.

### *Atlas Data Privacy Corporation*

45.    As pleaded in the Complaint, Atlas, standing alone, satisfies the required amount in controversy. As the purported assignee of 19,020 covered persons, at a minimum, Atlas seeks to recover $19,020,000 from Black Knight – an amount far in excess of the $75,000 threshold –

separate and apart from Plaintiffs' request for punitive damages, attorneys' fees and injunctive relief, all of which the Court also may consider.

46. To the extent Atlas contends Black Knight cannot aggregate the assignors' claims for purposes of the amount in controversy while disregarding Atlas' citizenship for diversity purposes, this position is incorrect and unsupported by authority. Diversity of citizenship is distinct from the amount in controversy. Furthermore, Black Knight does not argue here (but reserves the right to do so in the future) that the assignments to Atlas are invalid – only that they should be disregarded in determining diversity of citizenship. Accepting the allegations in the Complaint as true, Atlas is a single plaintiff with claims valued at least at $19,020,000. Therefore, the Court can exercise traditional diversity jurisdiction over Atlas, and supplemental jurisdiction over the other plaintiffs.

47. But even if the Court ignores Atlas in considering the amount in controversy, each of the Individual Plaintiffs' claims plausibly exceeds the jurisdictional threshold.

*Individual Plaintiffs*

48. The Individual Plaintiffs likely will argue that they suffered actual damages that exceed $1,000. For example, the Individual Plaintiffs allege that threats caused them to install camera systems and security alarms (*see* Exhibit A, at ¶ 21), and train their family members on how to handle attacks (*see id*., at ¶ 21). Indeed, Officer Jane Doe-1 claims, in essence, that publication of her home address by Black Knight allowed a criminal organization to locate her residence such that she fears for her life. *See id*., at ¶ 15. To the extent the Individual Plaintiffs intend to allege that these are actual damages attributable to violations of Daniel's Law, they are placing at issue claims that exceed the statutory minimum of $1,000 and potentially extend into the tens of thousands of dollars.

49.     Courts have recognized that the damages from pain and suffering alleged by plaintiffs can be worth more than $75,000.  *See, e.g.*, *Yucis*, 813 Fed. App'x at 782, n. 2 (holding that the plaintiff plausibly alleged more than $75,000 in controversy based on allegations that she experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as incurred attorneys' fees).

50.     Thus, upon information and belief, the Complaint plausibly alleges that more than $75,000 is at issue for each Individual Plaintiff, even before punitive damages, attorneys' fees, and injunctive relief are considered.

### *Punitive Damages*

51.     Daniel's Law provides that the Court musty award "punitive damages upon proof of willful or reckless disregard of the law."  N.J.S.A. 56:8-166.1(c)(2).  Plaintiffs are seeking an award of such damages from Black Knight due to alleged "willful noncompliance."  *See* Exhibit A, at Prayer for Relief, ¶ C.

52.     The Third Circuit has held that claims for punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."  *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) (quoting *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3rd Cir. 2004) (emphasis omitted)); *see also Valenta v. BI Inc.*, 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy.").

53.     Indeed, based on the allegations in the Complaint, punitive damages alone, if awarded, would likely to exceed the jurisdictional threshold based on N.J.S.A. 2A:15-5.14(b), which establishes that as a matter of law, defendants can be liable for punitive damages in an amount up to "five times the liability of that defendant for compensatory damages *or $350,000,*

*whichever is greater.*"  (emphasis added).  Thus, by seeking punitive damages under New Jersey

law, the Individual Plaintiffs each have presumptively placed at least $350,000 in controversy.

### *Attorneys' Fees*

54.    In addition to actual/statutory damages and punitive damages, Daniel's Law

requires that the Court award "reasonable attorney's fees."   N.J.S.A. 56:8-166.1(c)(3).   The

Plaintiffs likewise are seeking attorneys' fees.  *See* Exhibit A, at Prayer for Relief, ¶ D.

55.    "[I]n calculating the amount in controversy, we must consider potential attorney's

fees.  Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy,

attorney's fees are necessarily part of the amount in controversy if such fees are available to

successful plaintiffs under the statutory cause of action."  *Suber v. Chrysler Corp.*, 104 F.3d 578,

585 (3rd Cir. 1997) (citation omitted); *see also Venuto v. Atlantis Motor Grp., LLC*, 2017 WL

4570283, at *3 (D.N.J. Oct. 13, 2017) ("For purposes of calculating the amount in controversy,

reasonable attorneys' fees and punitive damages must be counted if they are available under New

Jersey state law"); *Andrews v. Home Depot U.S.A., Inc.*, 2010 WL 5464303, at *3 (D.N.J. Dec. 29,

2010) ("Plaintiffs also seek punitive damages and attorney's fees, both of which may be aggregated

with the compensatory damages when determining the amount in controversy").

56.    The Third Circuit commonly calculates attorneys' fees to determine the amount in

controversy at thirty percent of the compensatory and/or punitive damages.  *See, e.g., Ciccone v.*

*Progressive Specialty Ins. Co.*, 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including

attorneys' fees in the amount of 30 percent of the total of plaintiff's compensatory and treble

damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v.*

*Burlington County Corrections Dept.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) (In the

context of the amount in controversy, the "Third Circuit has noted that attorney's fees can be

estimated to be as high as 30% of the final judgment.").

57.     As outlined above, the Complaint plausibly alleges an aggregate of compensatory

damages and punitive damages that already far exceeds the $75,000 threshold for each Individual

Plaintiff.  But if those damages were to be increased by another 30 percent to account for attorneys'

fees, there can be no doubt that the amount in controversy requirement is satisfied.

### Injunctive Relief

58.     Finally, the Court also can take into account injunctive relief in determining the

amount in controversy because Daniel's Law states that the Court shall award "any other

preliminary and equitable relief as the court determines to be appropriate."  N.J.S.A. 56:8-

166.1(c)(4).  Plaintiffs ask the Court to enter "equitable or other permanent injunctive relief

requiring Defendants to comply with Daniel's law, including the appointment of a qualified

independent expert to ensure that Defendants prospectively maintain compliance with Daniel's

Law."  Exhibit A, at Prayer for Relief, ¶ F.

59.     When a plaintiff in a diversity case seeks injunctive relief, the amount in

controversy is determined by the "value of the object of the litigation."  *Columbia Gas*

*Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (quoting *Hunt v. Washington*

*Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)).  In addressing the value of the requested

injunctive relief, courts in the Third Circuit focus on the value to the plaintiff.  *See, e.g.*, *USAA*

*Casualty Ins. Co. v. CIT Bank*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018).

60.     In this case, there are two aspects to valuing Plaintiffs' requested injunctive relief:

(1) the cost of retaining an "independent expert to ensure that Defendants prospectively maintain

compliance with Daniel's Law," and (2) the value of Black Knight's ongoing compliance with

Daniel's Law to the Plaintiffs.

61.     The first part of Plaintiffs' requested injunctive relief is more concrete and likely

dispositive of the amount in controversy question, even if it was not aggregated with the

ME1 47955578v.1

compensatory/statutory damages, punitive damages, and attorneys' fees that Plaintiffs also request. The Complaint can plausibly be read as seeking the retention of an independent computer expert to monitor Black Knight's data and data suppression policies and practices for an undefined period into the future.  Upon information and belief, the type of expert that would be qualified to perform this work would likely charge several hundred dollars per hour.  At a rate of $400 per hour, 188 hours of work by such an expert, or a mere 16 hours of work per month for only one year – with no other relief awarded – would satisfy the amount in controversy requirement.

62.     The alleged value of ongoing compliance with Daniel's Law to the Plaintiffs is harder to quantify, but in all likelihood significant as well.  Plaintiffs allege that the purported availability of their information in Black Knight's databases exposes them to threats of harassment and violence.  *See* Exhibit A, at ¶¶ 15-23.  It is hard to imagine how Plaintiffs could possibly put a price on their ongoing safety and security.  The alleged enormity of the stakes weighs in favor of finding that the amount in controversy requirement is satisfied simply by Black Knight's ongoing compliance with Daniel's Law.

63.     But regardless of the precise monetary figure assigned to Plaintiffs' alleged safety and security concerns being met by Black Knight's compliance, the injunctive relief sought in the Complaint, when combined with the actual/statutory damages, punitive damages, and attorneys' fees, far exceeds the necessary amount.

64.     Accordingly, Black Knight plausibly pleads here that any plaintiff – whether Atlas or the Individual Plaintiffs – has claimed in excess of $75,000, exclusive of interest and costs, as damages for his or her purported Daniel's Law violations.

65.     Because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs, the requirements of diversity jurisdiction are satisfied.

**Class Action under the Class Action Fairness Act**

66.    Even though this Court has diversity jurisdiction for the reasons stated *supra*, removal of this action is also proper under the Class Action Fairness Act ("CAFA"). "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement)." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)).  In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action"  28 U.S.C. § 1332(d)(1)(B).

67.    This suit satisfies all of CAFA's requirements for federal jurisdiction over a class action because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

68.    As noted above, minimal diversity is met, because the citizenship of the Individual Plaintiffs – all residents of New Jersey – is different from that of Black Knight, which is a citizen of Delaware and Florida.

69.    The amount in controversy is likewise satisfied by aggregating – at a minimum – the liquidated damages under Daniel's Law of $1,000 per violation for 19,027 covered persons (the purported 19,020 Atlas assignors plus the seven named Individual Plaintiffs), or $19,027,000. This does not even consider the claims for punitive damages, attorneys' fees or request for injunctive relief which, as noted above, are substantial.

ME1 47955578v.1

70.     The numerosity requirement is likewise met.  "[T]he Third Circuit found that partial assignees (sic) can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement."  *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 060620, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)).  Here, the proposed class consists of 19,027 members when the Atlas assignors are coupled with the Individual Plaintiffs.  Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for purposes of CAFA jurisdiction.

71.     Lastly, while CAFA requires that the suit be filed under a state law analogue of Rule 23, the analogous state law need not be pleaded in the Complaint to satisfy CAFA.  Otherwise, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds."  *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891, 901 (8th Cir. 2017); *see also*, *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").  Accordingly, "[i]f a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is in substance an interstate class action."  *Erie Insurance Exchange v. Erie Indemnity Company*, 68 F.4th 815, 819 (3d Cir. 2023).

72.     Here, the Complaint is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit."  *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where plaintiff, an

assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction). Plaintiffs' decision not to cite a Rule 23-analogue in the Complaint does not "disguise the true nature of the suit." Atlas can only bring this suit in its capacity as the assignee for the claims of 19,020 assignors. As such, Atlas purports to bring claims on behalf of 19,020 individuals (numerosity), alleges commonality among the claims, and purports to present this case as one in which joinder of over 19,000 plaintiffs is not practicable or possible.[3] Furthermore, although Plaintiffs do not cite any joinder rule, the Complaint does not demonstrate how Plaintiffs could possibly join 19,027 claims in a single case absent the class action mechanism.

73.    Indeed, Plaintiffs' creative pleading, in an attempt to disguise this case as something other than a class action, is belied by Plaintiffs' counsel's contemporaneous class action lawsuit against LexisNexis arising from the same alleged conduct. On March 4, 2024, Plaintiffs' counsel filed suit in Bergen County Superior Court in the matter captioned *John Doe-1, et al. v. LexisNexis Risk Data Management, LLC*, Docket No. BER-L-001367-24, on behalf of two pseudonymous plaintiffs seeking to certify two separate classes – each consisting of at least 18,000 members – under Rule 4:32, the New Jersey state class action rule, of "[p]ersons who submitted a written Daniel's Law request to cease the disclosure of their home address or unpublished home telephone number." *See* Exhibit F (LexisNexis class action complaint), at ¶¶ 40-41. The filing of this class action lawsuit against LexisNexis concerning Daniel's Law violations based on nearly identical e-mail removal requests as alleged in the Complaint – and not even a month after the filing of the Complaint – reveals that Plaintiffs' counsel considers the true nature of this case to be a class action.

74.    Thus, all of the requirements for CAFA jurisdiction over a class action have been satisfied.

---

[3] Black Night does not, however, concede that Plaintiffs have established any element for class certification.

ME1 47955578v.1

**Mass Action under the Class Action Fairness Act**

75.    In the alternative, or in addition, to finding that this is a class action under CAFA, removal is proper to the extent the instant case is a "mass action" under CAFA.

76.    Federal jurisdiction exists under CAFA for a mass action that satisfies (1) the class action requirements of (a) minimal diversity, and (b) the $5,000,000 aggregate amount-in-controversy; (2) numerosity for a class action; and (3) the $75,000 individual amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(11).

77.    All of these elements, including the $75,000 individual amount-in-controversy requirement, have been discussed at length above. Accordingly, this Court may separately find that it has jurisdiction over this lawsuit as a "mass action" under CAFA.

78.    Finally, none of the exceptions to CAFA apply to this case. CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction for class actions. *See* 28 U.S.C. § 1332(d)(3)-(4). Each CAFA exception requires, as a threshold matter, an in-state defendant. But as demonstrated above, Black Knight is a citizen of Delaware and California, and not a citizen of New Jersey.

79.    Nor do any of the exceptions for federal jurisdiction over a "mass action" apply here. *See* 28 U.S.C. § 1332(d)(11)(B)(ii).

80.    Accordingly, this case qualifies as a CAFA mass action as well.

**WHEREFORE**, Black Knight respectfully requests that the State Court Action be removed from the Superior Court of New Jersey, Law Division, Mercer County, to the United States District Court for the District of New Jersey.

ME1 47955578v.1

McCARTER & ENGLISH, LLP


By: */s/ Scott S. Christie*
Scott S. Christie, Esq.
Four Gateway Center
100 Mulberry St.
Newark, NJ 07172
Phone: (973) 848-5388
Fax: (973) 297-3981
schristie@mccarter.com

*Counsel for Defendants Black Knight*
*Technologies, LLC and Black Knight, Inc.*


Dated:  March 26, 2024

ME1 47955578v.1